# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Sandra Lee Pinski and Timothy John
Pinski,

     Plaintiffs,

v.

City of Cottage Grove; City of Eden Prairie;
City of Inver Grove Heights; City of
Minneapolis; Sherburne County; City of
St. Paul; City of Woodbury; Michael
Campion, in his individual capacity as the
Commissioner of the Department of Public
Safety; Ramona Dohman, in her individual
capacity as the Commissioner of the
Department of Public Safety; John and Jane
Does (1-200), acting in their individual
capacity as supervisors, officers, deputies,
staff, investigators, employees or agents of
the other governmental agencies; Entity
Does (1-30), including cities, counties,
municipalities, and other entities sited in
Minnesota; Department of Public Safety
Does (1-30), acting in their individual
capacity as officers, supervisors, staff,
employees, independent contractors
or agents of the Minnesota Department of
Public Safety,

     Defendants.

Civil No. 14-325 (DWF/SER)

**MEMORANDUM
OPINION AND ORDER**

---

Lorenz F. Fett, Jr., Esq., Sonia L. Miller-Van Oort, Esq., and Jonathan A. Strauss, Esq.,
Sapentia Law Group PLLC, counsel for Plaintiffs.

Sarah C. S. McLaren, Assistant City Attorney, Minneapolis City Attorney's Office,
counsel for Defendant City of Minneapolis.

Jon K. Iverson, Esq., Stephanie A. Angolkar, Esq., and Susan M. Tindal, Esq., Iverson Reuvers Condon, counsel for Defendants City of Cottage Grove, City of Eden Prairie, City of Inver Grove Heights, and City of Woodbury.

Erin E. Benson, Esq., Margaret A. Skelton, Esq., and Timothy A. Sullivan, Esq., Ratwik Roszak & Maloney, counsel for Defendant Sherburne County.

Judith A. Hanson, Assistant City Attorney, St. Paul City Attorney's Office, counsel for Defendant City of St. Paul.

Oliver J. Larson, Assistant Attorney General, Minnesota Attorney General's Office, counsel for Defendants Michael Campion and Ramona Dohman.

---

## INTRODUCTION

This matter is before the Court on the following motions:  (1) Defendant City of Minneapolis' ("Minneapolis") Motion to Dismiss or to Sever (Doc. No. 10); (2) Defendants City of Cottage Grove, City of Eden Prairie, City of Inver Grove Heights, and City of Woodbury's (together, "City Defendants") Motion to Dismiss or to Sever (Doc. No. 15); (3) Defendant City of St. Paul's ("St. Paul") Motion to Dismiss or Sever (Doc. No. 21); (4) Defendant Sherburne County's ("Sherburne") Motion to Dismiss or Sever (Doc. No. 38); and (5) Michael Campion and Ramona Dohman's (together, "Commissioners") Motion to Dismiss (Doc. No. 43).  For the reasons set forth below, the Court grants in part and denies in part the motions.

## BACKGROUND

This case relates to the alleged unlawful access of Plaintiffs Sandra Lee Pinski ("S. Pinski") and Timothy John Pinski's ("T. Pinski") (together, the "Pinskis" or "Plaintiffs") information that is contained in the Department of Vehicle Services'

2

("DVS")[1] motor-vehicle records database for Minnesota Drivers (the "Database").

Plaintiffs allege that personnel from various government entities accessed their

information contained in the Database without a lawful purpose.  (Doc. No. 1, Compl.

¶ 1.)  Plaintiffs allege that the Database includes individuals' "names, dates of birth,

driver's license numbers, addresses, driver's license photos, weights, heights, social

security numbers, various health and disability information, and eye colors of Minnesota

drivers, both current and former information dating back to the driver's first license

issued in Minnesota."  (*Id.* ¶ 38.)  Many of the allegations in this case are identical to the

allegations made in the numerous and substantially similar cases previously filed in this

District[2] and are very familiar to the Court.  *See, e.g.*, *Mallak v. Aitkin Cnty.*, Civ. No.

13-2119, 2014 WL 1285807, at *1-3, *14-16 (D. Minn. Mar. 31, 2013) (describing

plaintiff's allegations relating to the actions by the various government entities and the

Commissioner defendants, and also describing the background and framework of the

Driver's Privacy Protection Act ("DPPA")).  Therefore, here, the Court need not restate

all of Plaintiffs' allegations, and instead, will focus on those alleged facts that are unique

to this case.

Plaintiffs allege that S. Pinski was a Firefighter/EMT who worked with the City of

Cottage Grove between 1998 and 2011.  (Compl. ¶ 32.)  S. Pinski then worked for the

---

[1]     DVS is a division of the Minnesota Department of Public Safety ("DPS").  (*See* Compl. ¶ 37.)

[2]     *See, e.g.*, *Sherno v. Anoka Cnty.*, Civ. No. 14-982, 2014 WL 4670926, at *1 (D. Minn. Sept. 19, 2014) (citing *Roschen v. Wabasha Cnty.*, Civ. No. 13-2490, 2014 WL 3105032, at *2 n.4 (D. Minn. June 26, 2014) (counting twenty-eight such cases in this District)).

Cottage Grove City Clerk between 2011 and 2013.  (*Id.*)  Plaintiffs allege that T. Pinski is a South Washington County Schools Maintenance Worker.[3]  (*Id.* ¶ 33.)  Members of S. Pinski's family are or have been married to law enforcement community members.  (*See* ¶ 35.)  Plaintiffs further allege that S. Pinski's roles with Cottage Grove led to exposure to law enforcement and "curiosity among law enforcement officers."  (*Id.* ¶¶ 34-36.)

Plaintiffs sought audit reports associated with their driver's license records from DVS in 2013.  (*Id.* ¶ 176.)  They received the audit report for S. Pinski on July 22, 2013, and on August 5, 2013 for T. Pinski.  (*Id.* ¶¶ 178-79.)  The audit reports revealed that S. Pinski's records had been accessed seventy-five times, and that T. Pinski's records had been accessed twenty-one times as follows:

| Plaintiff | Entity Accessing Records | Total Number of Lookups Alleged |
|---|---|---|
| S. Pinski | Cottage Grove | 51 |
| | Eden Prairie | 2 |
| | Minneapolis | 8 |
| | Sherburne | 2 |
| | St. Paul | 7 |
| | Woodbury | 3 |
| | Other | 2 |
| **TOTAL** | | **75** |
| T. Pinski | Cottage Grove | 9 |
| | Eden Prairie | 1 |
| | Inver Grove Heights | 1 |
| | St. Paul | 1 |
| | Woodbury | 1 |
| | Other | 8 |
| **TOTAL** | | **21** |

---

[3]     Though not specifically alleged, it appears from the briefs that Plaintiffs are married.

(*See id*. Exs. A & B.)  The audit reports show that each lookup was made by searches using the Pinskis' names, not their license plate or driver's license numbers.  (*Id.* ¶¶ 4, 5, 100.)  Plaintiffs assert that they never provided consent for access to their records and never waived consent.  (*Id*. ¶¶ 218, 244.)  Plaintiffs also allege that they have never been investigated by the entities listed above and have not committed any crimes that would authorize access to their personal data.  (*Id.* ¶ 184.)

In their Complaint, Plaintiffs assert the following claims:  (1) violation of the DPPA, 18 U.S.C. § 2721, *et seq*., against all Defendants; (2) violation of 42 U.S.C. § 1983 against all Individual Defendants including Jane and John Does; (3) violation of 42 U.S.C. § 1983 against all Entity Defendants, Supervisor Defendants, including John, Jane and Entity Does; (4) violation of 42 U.S.C. § 1983 against Commissioner Defendants and DPS Does; and (5) common law invasion of privacy against all Defendants.  (*Id*. ¶¶ 241-329.)

Defendants now move to dismiss based on the statute of limitations, failure to state a claim under the DPPA, failure to state a claim under § 1983, and failure to state a claim for invasion of privacy.  (*See, e.g.*, Doc. Nos. 18, 23, 40.)  Defendants also seek severance in the alternative.  (*See id.*)

DISCUSSION

## I.    Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.     Statute of Limitations

The issues raised by the parties in the present motions have been extensively discussed in connection with other DPPA cases in this District and need not be repeated here. With respect to the question of the applicable statute of limitations in DPPA cases,

6

the Court hereby adopts its prior reasoning in *Mallak*.  *See Mallak*, 2014 WL 1285807, at *4-6.  Therefore, the Court finds that with respect to Plaintiffs' DPPA claims, the standard rule applies, and the Court declines to apply the discovery rule as sought by Plaintiffs.  *Id.*  Application of the standard rule means that Plaintiffs' DPPA claims are subject to a four-year statute of limitations and that the clock begins running on the date when Plaintiffs' records were accessed.  *See id.*

In this case, because Plaintiffs filed their complaint on **February 4, 2014**, the statute of limitations bars claims regarding lookups occurring before **February 4, 2010**. As a result, Plaintiffs' DPPA claims related to the following eighty-two lookups (sixty-five for S. Pinski and seventeen for T. Pinski) that occurred before February 4, 2010, are time-barred and must be dismissed:

1. Plaintiff S. Pinski's claims against the City of Renville for forty-one lookups made before February 4, 2010.

2. Plaintiff S. Pinski's claims against the City of Eden Prairie for two lookups on July 26, 2006.

3. Plaintiff S. Pinski's claims against the City of Minneapolis for all eight lookups on:  August 18, 2007 (3 lookups); September 3, 2007 (1 lookup); December 13, 2008 (2 lookups); and February 14, 2009 (2 lookups).

4. Plaintiff S. Pinski's claims against Sherburne County for two lookups on June 27, 2003.

5. Plaintiff S. Pinski's claims against the City of St. Paul for all seven lookups on:  September 22, 2006 (3 lookups); January 5, 2006 (1 lookup); August 8, 2005 (1 lookup); June 1, 2009 (1 lookup); and November 10, 2005 (1 lookup).

6. Plaintiff S. Pinski's claims against the City of Woodbury for three lookups on:  September 4, 2008 (1 lookup) and September 8, 2008 (2 lookups).

7.      Plaintiff S. Pinski's claims relating to other entities' two lookups on December 2, 2005 (No. Metro (Arden Hills) Exam Station), and May 18, 2007 (South St. Paul Deputy Registrar).

8.      Plaintiff T. Pinski's claim against the City of Woodbury for one lookup on September 4, 2008.

9.      Plaintiff T. Pinski's claim against the City of St. Paul for one lookup on September 22, 2006.

10.     Plaintiff T. Pinski's claim against the City of Eden Prairie for one lookup on September 26, 2006.

11.     Plaintiff T. Pinski's claims against the City of Cottage Grove for fourteen of seventeen lookups on:  March 18, 2005 (1 lookup); May 24, 2005 (1 lookup); December 15, 2005 (1 lookup); January 9, 2006 (2 lookups); February 16, 2006 (1 lookup); March 28, 2008 (1 lookup); April 2, 2008 (1 lookup); January 16, 2004 (1 lookup); March 5, 2008 (1 lookup); May 13, 2009 (3 lookups); and August 2, 2006 (1 lookup).

(*See* Compl. Exs. A & B.)

The Court notes that Plaintiffs' new arguments relating to futility do not alter the Court's holdings or reasoning on the statute of limitations found in *Mallak*.  Specifically, Plaintiffs argue that before August 2011, it was DPS's practice to "withhold, deny and mislead the public to prevent access" to information about lookups of one's personal information on the Database.  (Compl. ¶ 173; Doc. No. 31 at 23.)  Plaintiffs argue that therefore, prior to August 2011, it would have been futile for Plaintiffs to request audit reports of lookups of their records.  (Doc. No. 31 at 23.)  Plaintiffs, however, fail to allege that they were ever denied access to an audit, and cite no specific facts in support of their assertion that DPS regularly denied access to audits prior to 2011.  Plaintiffs attach exhibits to their Complaint in an attempt to show two such instances in which an individual was denied access to an audit; however, these exhibits are insufficient to

support Plaintiffs' claim that DPS had a regular practice of denying access to audits prior to August 2011.

In sum, all DPPA claims for data lookups done prior to February 4, 2010 are dismissed as time-barred and only fourteen lookups, by two entities remain.

## III.    The DPPA

In light of the Court's ruling on the statute of limitations, the remaining lookups in this case that support Plaintiffs' DPPA claims are as follows:

| Plaintiff | Entity Accessing Records | Lookups Alleged |
|---|---|---|
| S. Pinski | Cottage Grove | 6/28/10 |
| | | 4/25/11 |
| | | 12/14/12 |
| | | 5/24/11 |
| | | 4/1/10 (2 lookups) |
| | | 6/10/11 (2 lookups) |
| | | 5/7/12 (2 lookups) |
| T. Pinski | Inver Grove Heights | 9/8/11 |
| | Cottage Grove | 6/10/11 |
| | | 3/6/12 |
| | | 12/14/11 |
| TOTAL | | 14 lookups |

(*See* Compl. at Exs. A & B.)

With respect to the remaining DPPA claims, the Court further incorporates its holdings and analysis in *Mallak* as they relate to DPPA claims.  *See Mallak*, 2014 WL 1285807, at *6-9.  Generally, to be liable under the DPPA, a defendant must knowingly obtain, disclose, or use personal information for a purpose other than one of the permissible purposes listed under Section 2721(b).  *See* 18 U.S.C. § 2724(a); *see also Mallak*, 2014 WL 1285807, at *6.  In *Mallak*, this Court further held that whether an

individual "obtained" information involves a fact-specific analysis, but need not

necessarily include physical possession, and that to state a claim under the DPPA, a

plaintiff must allege that the information was obtained "for a purpose not permitted."

*Mallak*, 2014 WL 1285807, at *6-9; *see also Nelson v. Jesson*, Civ. No. 13-340, 2013

WL 5888235, at *2 (D. Minn. Nov. 1, 2013) (holding that possession or acquisition of

information need not be tangible and information may be "obtained" through viewing);

*Kost v. Hunt*, 983 F. Supp. 2d 1121, 1133 (D. Minn. 2013) ("The plain language of the

[statute] . . . makes clear that the personal information must be knowingly obtained 'for a

purpose not permitted.'"). Here, Plaintiffs argue that they have adequately alleged the

elements of a DPPA claim against each Defendant. (*See* Compl. ¶¶ 94-100, 241-263.)

Plaintiffs also allege that the Commissioners failed to adequately control and monitor

access to Plaintiffs' data contained in the Database. (*See id*. ¶¶ 101-158.)

In light of the Court's analysis in *Mallak*, the Court must now examine the facts

alleged in this case to determine whether Plaintiffs have stated a plausible claim. *See*

*Roschen v. Wabasha Cnty.*, Civ. No. 13-2490, 2014 WL 3105032, at *6 (D. Minn.

June 26, 2014) (stating that in DPPA cases, the court must "attempt to discern cases

which allege plausible claims from cases where plaintiffs engage in farfetched

speculation that does not rise to the level of plausibility"). The Court concludes that

Plaintiffs sufficiently state plausible claims for violations of the DPPA for the remaining

fourteen lookups, and that the claims cross the requisite "line from conceivable to

plausible." *Twombly*, 550 U.S. at 570.

Here, Plaintiffs allege that that their information was accessed a total of ninety-six times.  (Compl. ¶¶ 94-95.)  Plaintiffs allege that S. Pinski was a Firefighter/EMT in Cottage Grove and was exposed to individuals in law enforcement as a result.  (*Id.* ¶¶ 32, 34.)  The vast majority of S. Pinski's lookups were by individuals in Cottage Grove—that is, where she worked.  (*See id.* at Ex. A.)  According to Plaintiffs, and based upon the audit attached to Plaintiffs' Complaint, lookups of S. Pinski's information and her husband, T. Pinski's information, were regularly conducted within minutes of each other.  (*See id.* Exs. A & B.)  Plaintiffs further allege that the searches of their information were "made by name, not license plate number."  (*Id.* ¶¶ 4, 5, 100.)  Plaintiffs also point to state reports and articles relating to the misuse of state databases, including the Database.  (*Id*. ¶¶ 209-210, 230.)  Finally, Plaintiffs allege that they have not committed crimes or been investigated in any way that would support a "permissible" access to their data.  (*Id.* ¶ 184.)

As in *Mallak*, at this stage, these facts, together, sufficiently state a plausible claim that Plaintiffs' records were not accessed for a permitted purpose.  *Mallak*, 2014 WL 1285807, at *8-9.  In *Mallak*, plaintiff alleged facts that supported an inference that the persons who accessed her records were interested in her based on her role as an attorney and in the community, and, as a result, most of the lookups of Mallak were in the areas where she worked.  *See id.*  The same is true here, as the lookups primarily occurred in Cottage Grove where S. Pinski worked.  (*See* Compl. Ex. A.)  The fact that the lookups of S. Pinski and T. Pinski often occurred at nearly the exact same time connects the lookups of both Plaintiffs.  (*See id.* Exs. A & B.)  Further, the connected lookups between

husband and wife create a "troubling pattern" as seen in *Kampschroer v. Anoka County*,

where the court found that the plaintiffs had raised a plausible inference of improper use.

*See* Civ. No. 13-2512, 2014 WL 4988405, at * 2-3, 10-11 (D. Minn. Oct. 7, 2014).  These

facts offer more than mere "speculation," and instead offer a plausible inference that

Defendants acted for an impermissible purpose.  *See Roschen*, 2014 WL 3105032, at *6.

In sum, Plaintiffs allege sufficient facts to support a claim for a DPPA violation against

Cottage Grove and Inver Grove Heights, and therefore, Defendants' motions under Rule

12(b)(6) are denied to the extent they relate to such lookups.

## IV.    42 U.S.C. § 1983

Plaintiffs' § 1983 claims also do not survive Defendants' motions to dismiss.  The

Court hereby adopts its prior reasoning in *Mallak* with respect to Plaintiff's § 1983

claims.  *Mallak*, 2014 WL 1285807, at *9-12; *see also Potocnik v. Carlson*, Civ.

No. 13-2093, 2014 WL 1206403, at *12-16 (D. Minn. Mar. 24, 2014); *Kiminski v. Hunt*,

Civ. No. 13-185, 2013 WL 6872425, at *9-15 (D. Minn. Sept. 20, 2013).  In sum, as

detailed in a number of DPPA cases before courts in this District, including by this Court

in *Mallak*, claims under § 1983 cannot stand because:  (1) the DPPA constitutes a

comprehensive enforcement scheme and thereby precludes a remedy under § 1983;

(2) there is no constitutional right to privacy in the information that Plaintiffs seek to

protect; and (3) there is no reasonable expectation of privacy in the information that

Plaintiffs seek to protect.[4]  *Mallak*, 2014 WL 1285807, at *9-12; *see also Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1070-77 (D. Minn. 2014); *Potocnik*, 2014 WL 1206403, at *12-16; *Kiminski*, 2013 WL 6872425, at *9-15.  Thus, all of Plaintiffs' § 1983 claims are dismissed in their entirety.[5]

## V.     Invasion of Privacy

With respect to Plaintiffs' invasion of privacy claims, the Court dismisses those claims for failure to state a claim, consistent with its ruling in *Mallak*.  *See Mallak*, 2014 WL 1285807, at *13-14.  As alleged, Plaintiffs' claims do not rise to the requisite level of offensiveness to state a claim.  Thus, the Court adopts its analysis and holding in *Mallak* on this issue.  *Id*.  Consequently, all Count V invasion of privacy claims against all Defendants are dismissed in their entirety.

## VI.    Commissioners

The arguments Plaintiffs present in this case with respect to the Commissioners are substantially similar to those presented in *Mallak*.  As a result, the Court again concludes that all claims against the Commissioners must be dismissed in accordance with its analysis and holdings in *Mallak*, which it adopts herein.  *See Mallak*, 2014 WL 1285807, at *14-16.  To the extent that Plaintiffs make an additional argument that the

---

[4]      Plaintiffs assert claims under both the Fourth and Fourteenth Amendments based on alleged illegal searches and violations of the right to privacy.  The Court addresses both together in *Mallak*.  *See Mallak*, 2014 WL 1285807, at *9-12.

[5]      To the extent Plaintiff seeks to assert a *Monell* claim, there is no such claim where there is no underlying violation of Plaintiffs' constitutional rights.  *See Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007); *Mallak*, 2014 WL 1285807, at *13.  As a result, any *Monell* claims against the City and County Defendants are dismissed.

Commissioners are subject to strict liability, the Court finds the reasoning in *Potocnik* persuasive and also adopts that reasoning herein.  *See Potocnik*, 2014 WL 1206403, at *4. Therefore, Plaintiff's claims against the Commissioners are dismissed in their entirety.

## VII.    Qualified Immunity

To the extent Defendants assert that they are entitled to qualified immunity, the Court further adopts its reasoning in *Mallak.  See Mallak*, 2014 WL 1285807, at *13.  In sum, the Court finds that Plaintiffs have adequately alleged the violation of a clearly established statutory right, but that Defendants may be able to establish that they are in fact entitled to qualified immunity as the case proceeds.  *Id.*  At this stage, however, there is no qualified immunity.

## VIII.  Severance

Because the Court has dismissed all of the claims relating to all Defendants other than Cottage Grove and Inver Grove Heights, those Defendants' requests for severance are moot.  The Court declines to sever the two remaining City Defendants—Cottage Grove and Inver Grove Heights—at this time.  Currently, Plaintiffs assert a number of allegations relating to systemic issues across Minnesota, and the legal issues are common to the parties.  Thus, severance is inappropriate at this time.  However, the Court may sever the parties at a later time should it become necessary.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant City of Minneapolis' Motion to Dismiss or to Sever (Doc.
No. [10]) is **GRANTED** and all Counts against the City of Minneapolis are **DISMISSED
WITH PREJUDICE**.

2.      Defendants City of Cottage Grove, City of Eden Prairie, City of
Inver Grove Heights, and City of Woodbury's Motion to Dismiss or to Sever (Doc. No.
[15]) is **GRANTED IN PART and DENIED IN PART** as follows:

a.      The Motion is **GRANTED** with respect to the City of
Eden Prairie and the City of Woodbury, and all claims against them are
**DISMISSED WITH PREJUDICE.**

b.      With respect to Count I, the Motion is **GRANTED** for the
City of Cottage Grove and the City of Inver Grove Heights for all lookups
done before February 4, 2010, and **DENIED** for the following fourteen
lookups only:

| Plaintiff | Entity Accessing Records | Lookup Date |
|---|---|---|
| S. Pinski | Cottage Grove | 6/28/10 |
| | | 4/25/11 |
| | | 12/14/12 |
| | | 5/24/11 |
| | | 4/1/10 (2 lookups) |
| | | 6/10/11 (2 lookups) |
| | | 5/7/12 (2 lookups) |
| T. Pinski | Inver Grove Heights | 9/8/11 |
| | Cottage Grove | 6/10/11 |
| | | 3/6/12 |
| | | 12/14/11 |
| **TOTAL** | | **14 lookups** |

      c.     With respect to Count II through V, the Motion is

**GRANTED** for the City of Cottage Grove and the City of

Inver Grove Heights, and those claims are dismissed in their entirety.

     3.     Defendant City of St. Paul's Motion to Dismiss or to Sever (Doc. No. [21])

is **GRANTED** and all Counts against the City of St. Paul are **DISMISSED WITH**

**PREJUDICE**.

     4.     Defendant Sherburne County's Motion to Dismiss or to Sever (Doc.

No. [38]) is **GRANTED** and all Counts against Sherburne County are **DISMISSED**

**WITH PREJUDICE**.

     5.     Michael Campion and Ramona Dohman's Motion to Dismiss (Doc.

No. [43]) is **GRANTED** and all Counts against Michael Campion and Ramona Dohman

are **DISMISSED WITH PREJUDICE**.


Dated:  November 7, 2014        <u>s/Donovan W. Frank</u>
                                    DONOVAN W. FRANK
                                    United States District Judge